# EXHIBIT 5

**EQT**                                                                    <u>**EXECUTION VERSION**</u>

June 10, 2022

**To:**

EQT AB (the "**Company**")

1.  On May 11, 2022, Exeter Property Group, LLC, a Delaware limited liability company ("**Buyer**"), and the Sellers thereunder, entered into an agreement pursuant to which the Buyer will acquire from the Sellers 100% of the issued and outstanding Company Interests of Redwood Capital Group Holdings, LLC, a Delaware limited liability company, in consideration for (i) the Purchase Price and (ii) subject to the terms and conditions set forth therein, the right, in favour of Mr. Carlson pursuant to Section 1.5 of the Transaction Agreement, to receive certain Earn-Out Payments (the "**Transaction Agreement**"). Unless otherwise stated, defined terms used in this letter (this "**Lock-Up Letter**") shall have the meaning given to them in the Transaction Agreement.

2.  Under and subject to the terms and conditions of Section 1.5 of the Transaction Agreement, 50% of any Earn-Out Payment is to be used to acquire EQT Shares ("**Earn-Out Shares**"). In connection with the undersigned's obligation to acquire the Earn-Out Shares, the undersigned hereby agrees and acknowledges that, during the period (the "**Lock-Up Period**") from the date such Earn-Out Shares are acquired and continuing until any such Earn-Out Shares or any securities in the Company received in exchange therefor ("**Shares**") become vested in accordance with <u>Section 3.4</u>, <u>Section 3.5</u> and <u>Section 3.6</u> of that certain Share Forfeiture Letter delivered by the undersigned on the date hereof, the undersigned shall not, directly or indirectly, without the prior written consent of the Company**:**

    a) offer, sell, pledge, contract to offer, sell or pledge, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend, or otherwise transfer or dispose of, directly or indirectly, any Shares;

    b) enter into any swap, hedge or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of the Shares; or

    c) publicly disclose the intention to enter into any transaction or perform any action referred to in a) or b) above, whether any such transaction described in a) or b) above is to be settled by delivery of Shares, in cash or otherwise.

3.  Notwithstanding this, section 2 (a-c) shall not apply to:

    a) any transaction between the undersigned and a holding company which is wholly owned by the undersigned, provided that such company has signed and delivered a lock-up letter substantially in the form of this lock-up letter before the transaction is effectuated;

    b) any acceptance of, or any undertaking to accept, a public takeover offer made to all (or substantially all) of the holders of shares of the Company and made on terms that treat all holders of shares of EQT alike by a person who is not acting in concert with the undersigned;



c) any transfer of Shares in connection with a redemption of shares in the Company or an offer by the Company to purchase its own shares which is made on identical terms to all holders of shares in the Company;

d) any transfer (including donations) of Shares to the EQT Foundation;

e) any rights derived from the Shares in connection with an offering by the Company with preferential rights for its shareholders; and

f) any transaction required by law or regulation, including pursuant to an order or ruling by a court or competent judicial body or public authority, outside of the control of the undersigned.

4.  Each occasion upon which Earn-Out Shares are acquired by the undersigned in accordance with the terms of Section 1.5 of the Transaction Agreement shall be referred to as an "Earn-Out Share Acquisition."  The provisions of this Lock-Up Letter shall apply separately to Shares acquired upon each Earn-Out Share Acquisition by the undersigned in accordance with the terms of Section 1.5 of the Transaction Agreement.

5.  The undersigned understands that this Lock-Up Letter is irrevocable and shall be binding upon the undersigned's heirs, legal representatives, successors and assigns.

6.  In the event of breach of this Lock-Up Letter, the undersigned agrees to compensate the Company by paying to the Company in cash a sum equal to the product of (i) the volume weighted average of the trading prices for ordinary shares of the Company as reported for composite transactions on the NASDAQ OMX Stockholm Stock Exchange (or other primary exchange or market for such securities) during the 30 consecutive trading days preceding the trading day immediately prior to the date of such breach and (ii) the number of Shares retained or disposed of in breach of this Lock-Up Letter (subject to appropriate adjustment for stock splits, stock dividends, combinations, and other recapitalizations).

7.  This Lock-Up Letter shall be governed by and construed in accordance with the laws of the Kingdom of Sweden. Any dispute, controversy or claim arising out of or in connection with this Lock-Up Letter, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the rules of the Arbitration Institute of the Stockholm Chamber of Commerce in Stockholm, Sweden. The number of arbitrators shall be three. The arbitration shall take place in Stockholm.



Very truly yours,

Name: David Carlson

Place, date: June 10, 2022