# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID CARLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 25-cv-0503-SB |
| EXETER PROPERTY GROUP, LLC | ) | |
| and EQT AB | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS

|  |  |
|---|---|
| OF COUNSEL: | A. Thompson Bayliss (#4379)<br>Christopher Fitzpatrick Cannataro (#6621)<br>ABRAMS & BAYLISS LLP |
| Shannon Rose Selden<br>Barrett J. Greenwell<br>DEBEVOISE & PLIMPTON LLP<br>66 Hudson Boulevard<br>New York, NY 10001<br>(212) 909-6000<br>srselden@debevoise.com<br>bjgreenwell@debevoise.com | 20 Montchanin Rd., Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>cannataro@abramsbayliss.com<br><br>*Attorneys for Exeter Property Group, LLC*<br>*and EQT AB* |

Date: September 8, 2025

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT .........................................................................................................2

I.    This Court Lacks Personal Jurisdiction Over EQT AB. ................................2

      A.    EQT AB Is Not Bound by the Forum Selection Clause in the Purchase Agreement.........................................................................2

      B.    The Complaint Fails to Plead *Any* Contact Between EQT AB and Delaware, let alone Sufficient Facts to Establish Personal Jurisdiction. ................................................................................6

      C.    This Court Should Not Allow Carlson to Engage in a Jurisdictional Fishing Expedition.........................................................8

II.    The Complaint's Breach of Contract and Implied Covenant Claims Against EQT AB Should Be Dismissed Because Carlson Fails to Plead Any Facts Showing that Exeter Acted as EQT AB's Agent. ................9

III.    The Complaint Fails to Plead Fraud with Particularity................................11

IV.    The Plain Terms of the Purchase Agreement Bar the Complaint's Negligent Misrepresentation Claim.............................................................13

V.    The Complaint's Unjust Enrichment Claim Is Barred Because Carlson's Rights Are Governed by the Purchase Agreement. .......................14

VI.    The Complaint Identifies No Gap in the Purchase Agreement for the Implied Covenant of Good Faith and Fair Dealing to Fill. ...........................15

CONCLUSION......................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Ajay Endeavors, Inc. v. Divvymed, LLC*,
2022 WL 605695 (D. Del. 2022)............................................................12, 14, 15

*Allied Cap. Corp. v. GC-Sun Holdings, L.P.*,
910 A.2d 1020 (Del. Ch. 2006) ........................................................................15

*Arcelik A.S. v. EI DuPont de Nemours & Co.*,
2023 WL 3862506 (3d Cir. 2023) .....................................................................11

*Baccellieri v. HDM Furniture Indus., Inc.*,
2013 WL 1088338 (Del. Super. Ct. 2013), *aff'd*, 74 A.3d 653 (Del.
2013) ................................................................................................................10

*Capano v. Ecofibre Ltd.*,
2025 WL 419494 (Del. Ch. 2025).....................................................................15

*Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*,
2008 WL 963048 (Del. Ch. 2008) .....................................................................14

*Crispo v. Musk*,
304 A.3d 567 (Del. Ch. 2023) ............................................................................4

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
335 F. Supp. 3d 657 (D. Del. 2018).....................................................................2

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin
Intermediates,*
*S.A.S.*, 269 F.3d 187 (3d Cir. 2001) ..................................................................10

*Eastman Chem. Co. v. AlphaPet Inc.*,
2011 WL 6004079 (D. Del. Nov. 4, 2011).........................................................3

*Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*,
2018 WL 2727542 (Del. Ch. 2018)..............................................................12, 13

*Emerson v. Mezzion Int'l, LLC*,
2021 WL 765765 (D. Del. 2021)..........................................................................9

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
623 F.3d 147 (3d Cir. 2010) ......................................................................6

*Express Scripts, Inc. v. Bracket Holdings Corp.*,
248 A.3d 824 (Del. 2021) ........................................................................14

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ....................................................................11

*Highway to Health, Inc. v. Bohn*,
2020 WL 1868013 (Del. Ch. 2020) ...........................................................6

*Infab Holdco, Inc. v. Cusick*,
2025 WL 1430771 (Del. Ch. 2025) .........................................................14

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. &*
*Placement*,
326 U.S. 310 (1945)...................................................................................7

*Kuroda v. SPJS Holdings, L.L.C.*,
971 A.2d 872 (Del. Ch. 2009) .................................................................15

*Loc. Home Care Partners, LLC, v. Home Care and Staffing Sols.,*
*LLC, et al.*,
2025 WL 2393084 (Del. Super. Ct. 2025).................................................4

*Mallinckrodt PLC v. Airgas Therapeutics LLC*,
2024 WL 1251260 (D. Del. 2024)..............................................................8

*Mobile Diagnostic Grp. Holdings, LLC v. Suer*,
972 A.2d 799 (Del. Ch. 2009) ...............................................................6, 7

*Monsanto Co. v. Syngenta Seeds, Inc.*,
443 F. Supp. 2d 636 (D. Del. 2006).........................................................7

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
263 F. Supp. 3d 498 (D. Del. 2017)........................................................7, 8

*O'Leary v. Telecom Resource Service, LLC*,
2011 WL 379300 (Del. Super. Ct. 2011)..................................................9

*Osram Sylvania Inc. v. Townsend Ventures, LLC*,
2013 WL 6199554 (Del. Ch. 2013)..........................................................16

*Partners & Simons, Inc. v. Sandbox Acquisitions, LLC*,
  2021 WL 3161651 (Del. Ch. 2021) ..........................................................................5

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
  117 F. Supp. 3d 613 (D. Del. 2015)..........................................................................9

*Registered Agents, Ltd. v. Registered Agent, Inc.*,
  880 F. Supp. 2d 541 (D. Del. 2012)..........................................................................8

*Richard A. Schuetze, Inc. v. Utilligent, LLC*,
  2022 WL 958359 (D. Del. 2022)..............................................................................16

*Ruggiero v. FuturaGene, plc.*,
  948 A.2d 1124 (Del. Ch. 2008) .................................................................................9

*Shaw v. New Castle Cnty.*,
  2021 WL 4125648 (D. Del. 2021).............................................................................11

*Skye Min. Invs., LLC v. DXS Cap. (U.S.) Ltd.*,
  2020 WL 881544 (Del. Ch. 2020) ............................................................................10

*Sustainability Partners LLC v. Jacobs*,
  2020 WL 3119034 (Del. Ch. 2020) ...........................................................................5

*Twardzik v. HP Inc.*, 2022 WL 606092 (D. Del. 2022), *aff'd*,
  2023 WL 5770999 (3d Cir. 2023) ............................................................................13

*VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*,
  2021 WL 3403932 (D. Del. 2021)..............................................................................8

**Statutes**

10 *Del. C.* § 3104 ........................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 9 ...................................................................................................11, 12

v

Defendants Exeter Property Group, LLC ("Exeter") and EQT AB (collectively, "Defendants") submit this reply brief in further support of their partial motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

Unhappy with the outcome of the deal he struck for Exeter to acquire Redwood, Plaintiff David Carlson ("Carlson" or "Plaintiff") initiated this lawsuit in an attempt to re-trade its terms. In response to Defendants' partial motion to dismiss, Plaintiff's Opposition only confirms that his Complaint overreaches in terms of both parties and claims and should be dismissed in large part.

*First*, Plaintiff tries to haul EQT AB into this Court even though it has had no contact with Delaware to establish personal jurisdiction and is not a party to the Purchase Agreement that designates Delaware as the forum for disputes. *Second*, unable to refute that EQT AB cannot have breached a contract to which it is not a party, Plaintiff asks this Court to impute Exeter's alleged contractual obligations to EQT AB without pleading any facts showing that Exeter operated as its agent. *Third*, unable to secure earnout payments under the agreed-upon deal terms, Plaintiff resorts to claiming fraud while failing to explain how he could have reasonably relied on optimistic statements about the future that were not embodied in the Purchase Agreement. *Fourth*, Plaintiff tries to bring a claim for negligent fraudulent misrepresentation even though the plain terms of the Purchase Agreement only allow

claims for intentional fraud. *Fifth* and *Sixth*, he sues for unjust enrichment and breach of the implied covenant even though his rights and remedies regarding his earnout are governed by the Purchase Agreement's earnout clause.

This Court should hold Carlson to the deal reflected in the Purchase Agreement's plain text and should reject his attempts to reimagine that deal on more favorable terms.

## ARGUMENT

### I.    This Court Lacks Personal Jurisdiction Over EQT AB.

Carlson goes to lengths to emphasize that EQT AB has submitted "no evidence" and that this Court has held no "evidentiary hearing" regarding personal jurisdiction, Pl's. Br. in Opp'n, 4, 9-10 (hereinafter "Opp'n"), but that does not alter the fact that it is his burden – not EQT AB's – to come forward with evidence showing "with reasonable particularity that sufficient minimum contacts have occurred between" EQT AB and Delaware. *E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 665 (D. Del. 2018) (citation omitted). He has failed to do so here.

### A.    EQT AB Is Not Bound by the Forum Selection Clause in the Purchase Agreement.

EQT AB is not a signatory to the Purchase Agreement, is not bound by its forum selection clause, and did not otherwise consent to jurisdiction in Delaware. While generally "only those parties that have actually signed the agreement-at-issue

2

are bound by its forum selection clause," Delaware courts will in rare circumstances enforce the forum selection clause against a non-party where: (1) the forum selection clause is valid; (2) the non-signatory is a third-party beneficiary or closely related to the agreement; and (3) the claims arise from the non-signatory's status related to the agreement. *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 6004079, at *4 (D. Del. Nov. 4, 2011) (citation omitted).

*First*, Carlson has failed to show EQT AB constituted a third-party beneficiary under the agreement because he has not shown: (1) the parties to the Purchase Agreement "intended that [EQT AB] benefit from the contract;" (2) the benefit was "intended as a gift or in satisfaction of a pre-existing obligation to" EQT AB; and (3) "the intent to benefit [EQT AB was] a material part of the parties' purpose in entering into the contract." *Id.* at *5 (citation omitted). Regarding the first element, the parties to the Purchase Agreement plainly did not intend for EQT AB to be a third-party beneficiary of this Agreement because they included a contractual term disclaiming any such benefit. *See* PA § 9.4 ("No Assignment or Benefit to Third Parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto . . . nothing in this Agreement, express or implied, is intended to confer upon any Person other than Buyer [and] Sellers . . . any rights or remedies under or by reason of this Agreement."). Delaware courts enforce these provisions as written, particularly where, as here, they include a customized

3

carveout.[1] *See Loc. Home Care Partners, LLC, v. Home Care and Staffing Sols., LLC, et al.*, 2025 WL 2393084, at \*11 (Del. Super. Ct. 2025) ("Courts enforce 'customized' no third-party beneficiary provisions under freedom of contract principles." (citation omitted)); *Crispo v. Musk*, 304 A.3d 567, 575 (Del. Ch. 2023) (customized provision shows "the parties knew how to confer third-party beneficiary status and deliberately chose not to do so with respect to any unlisted groups").

Nor does Carlson even attempt to satisfy the second or third element.  He invokes the Share Forfeiture and Lock Up Letters, Opp'n 6-7, but has not pleaded that these letters were "a material part" of why Exeter and Carlson entered into the Purchase Agreement for Exeter to acquire Redwood or what "pre-existing obligation" to EQT AB they were intended to satisfy.  These letters, in any event, do not reflect an intent to confer benefits upon EQT AB or otherwise show EQT AB's consent to jurisdiction in Delaware: they are governed by non-Delaware law and provide for dispute resolution in non-Delaware forums (Illinois and Sweden); they are not signed by EQT AB and only impose obligations on Carlson; and they never became operational because Carlson never reached any earnout milestone.  *See* Defs.' Br. in Supp., at 15 (hereinafter "Mot.").

---

[1] Section 9.4 includes a carveout for Section 5.6, which provides that Exeter shall provide D&O Indemnification and Insurance "for the benefit of" and "enforceable by" certain D&O Indemnified Parties.  PA § 5.6.

***Second***, despite Carlson's passing argument in a footnote, Opp'n 8 n.1, Carlson does not show that EQT AB is "closely related" to the Purchase Agreement such that: (<u>1</u>) EQT AB received a "direct benefit" from the Purchase Agreement; or (<u>2</u>) it was "foreseeable" that EQT AB would be bound by the Purchase Agreement. *Sustainability Partners LLC v. Jacobs*, 2020 WL 3119034, at *6 (Del. Ch. 2020). Carlson again points to the Share Forfeiture and Lock Up Letters, but they relate only to the earnout clause that was clearly intended to inure to ***Carlson's*** benefit, not to ***EQT AB's***. *See* PA § 1.5 (chance for Carlson to earn up to $23.975 million in deal consideration). And even if Carlson's obligation to use part of his earnout payments to purchase EQT AB stock constituted a benefit to EQT AB, that benefit was, at best, impermissibly indirect and, in all events, never came to pass. *See Partners & Simons, Inc. v. Sandbox Acquisitions, LLC*, 2021 WL 3161651, at *4 (Del. Ch. 2021) ("[I]ndirect benefits have been deemed insufficient to satisfy the test."); *Sustainability Partners*, 2020 WL 3119034, at *6 (non-party must "actually receive a benefit . . . the mere contemplation of a benefit" is insufficient (cleaned up)). Finally, Carlson offers no explanation for how these unilateral letters that only he signed and that set Illinois and Sweden as the places for dispute resolution made it "foreseeable" to EQT AB that it would be bound to litigate in Delaware Court.

**B.    The Complaint Fails to Plead *Any* Contact Between EQT AB and Delaware, let alone Sufficient Facts to Establish Personal Jurisdiction.**

Carlson also fails to show this Court's personal jurisdiction over EQT AB under Delaware's long-arm statute or in accordance with due process.

***First***, Carlson invokes Section 3104(c)(1) of Delaware's long-arm statute, Opp'n 9, but that provision on its face confers jurisdiction only over a non-Delaware resident who "[t]ransacts any business or performs any character of work or service ***in the State" of Delaware***.  10 *Del. C.* § 3104(c)(1) (emphasis added).  As that plain language makes clear, Section 3104(c)(1) requires that "some act must actually occur in Delaware." *Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 804 (Del. Ch. 2009); *see also Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 156-57 (3d Cir. 2010) (no jurisdiction where "[t]here is no indication that [the non-resident] committed any act or omission in Delaware").

Carlson ignores this clear statutory requirement and instead impermissibly points to alleged conduct by EQT AB that took place ***outside*** of Delaware.  Carlson's contentions that EQT AB personnel were involved in negotiating the Purchase Agreement and later in the earnout process, Opp'n 10-11, do not reflect any conduct by those personnel in Delaware.  *See Highway to Health, Inc. v. Bohn*, 2020 WL 1868013, at *5 (Del. Ch. 2020) (no jurisdiction where the "factual allegations fail to demonstrate that ***any act actually occurred in Delaware*** with respect to the dispute

6

in this case" (emphasis in original)); *Mobile Diagnostic Grp.*, 972 A.2d at 805 (same, where the contract was not signed or negotiated in Delaware).

Nor does EQT AB's acquisition of Exeter years earlier confer jurisdiction over EQT AB, Opp'n 10, because "the mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient" to establish jurisdiction. *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 645 (D. Del. 2006) (citation omitted). Even if it were, Carlson's claims do not relate to Exeter's incorporation in Delaware and therefore do not implicate jurisdiction over EQT AB in this matter. *See id.* (no jurisdiction where "none of the counterclaims rise from the act of incorporation").

***Second***, Carlon's pleadings do not pass constitutional muster because he similarly has not shown EQT AB's "minimum contacts with [Delaware] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). And although Carlson is correct that in some instances a single act may suffice to satisfy due process, Opp'n 15, here he has failed to plead that EQT AB was "at home" in Delaware, "purposefully directed" its activities at Delaware residents, or otherwise took even a single action in Delaware. *See Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 504 (D. Del. 2017) (due process not satisfied for parent company absent showing of contact with

7

Delaware beyond "mere ownership of a subsidiary"); *VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, 2021 WL 3403932, at *10 (D. Del. 2021) (same, where nonresidents did not sign the agreement nor take "actions in Delaware or aim[] conduct toward Delaware").

### C.    This Court Should Not Allow Carlson to Engage in a Jurisdictional Fishing Expedition.

Unable to establish personal jurisdiction over EQT AB, Carlson asks this Court to allow him to subject EQT AB to burdensome jurisdictional discovery. Opp'n 16-17. But the topics he claims need further investigation constitute the sort of quintessential "fishing expedition," *Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d 541, 548 (D. Del. 2012) (citation omitted), based on nothing more than "vague assertions about the information [he] hope[s] to find," *Mallinckrodt PLC v. Airgas Therapeutics LLC*, 2024 WL 1251260, at *5 (D. Del. 2024), that this Court routinely rejects.

Carlson seeks discovery regarding EQT AB's role in negotiating the Purchase Agreement and managing Exeter, Opp'n 16, but he provides nothing to suggest that jurisdictional discovery would show that EQT AB, a Swedish company, took any action in Delaware. *See Registered Agents, Ltd*, 880 F. Supp. 2d at 548 (no discovery where the plaintiff "presented no evidence indicating that defendant conducts business within Delaware"); *Nespresso USA, Inc.*, 263 F. Supp. 3d at 508 ("bare assertions" of control insufficient to warrant discovery). Carlson further seeks

8

discovery regarding "any additional benefits EQT AB" might have realized under the Purchase Agreement, Opp'n 16, but "no amount of discovery would change the terms of" that Agreement to confer direct benefits onto EQT AB.  *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1138 (Del. Ch. 2008); *see also Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 632 (D. Del. 2015) (no discovery given lack of "factual allegations" regarding "what benefits [defendant] stood to derive from the [agreement]").

## II.     The Complaint's Breach of Contract and Implied Covenant Claims Against EQT AB Should Be Dismissed Because Carlson Fails to Plead Any Facts Showing that Exeter Acted as EQT AB's Agent.

Undaunted by the fact that he entered into the Purchase Agreement with ***Exeter***, Carlson sues nonparty ***EQT AB*** for breach of contract and implied covenant. But Delaware law is clear that "a contract cannot bind a nonparty" such as EQT AB. *Emerson v. Mezzion Int'l, LLC*, 2021 WL 765765, at *1 (D. Del. 2021) (Bibas, J.) (citation omitted).  Carlson invokes a limited exception, claiming that Exeter acted as EQT AB's agent, Opp'n 17-19, but he has not pleaded any non-conclusory facts showing: (1) "an arrangement exists between the two corporations so that one acts on behalf of the other and within usual agency principles;" and (2) "the arrangement [is] relevant to the plaintiff's claim of wrongdoing." *O'Leary v. Telecom Resource Service, LLC*, 2011 WL 379300, at *7 (Del. Super. Ct. 2011) (citation omitted).

9

Carlson pleads legal conclusions that Exeter was a "subsidiary of . . . and under the control of EQT AB," and that "upon information and belief" EQT AB controlled Exeter's characterization of EMVF II as a "third fund" and its decision not to make the earnout payment to Carlson, Compl. ¶ 123, 129, 182, but he pleads nothing about any "arrangement" between EQT AB and Exeter, how such an arrangement is relevant to his "claim of wrongdoing," or how Exeter acted "on behalf of" EQT AB. To the contrary, the Complaint and Purchase Agreement show it was Exeter that purchased Redwood and which would have been obligated to make earnout payments to Carlson (if he had achieved any earnout milestones). Compl. ¶ 65; PA § 1.5. Exeter's nonpayment under the earnout provision was thus an assessment of its own obligations under the Purchase Agreement – it had nothing to do with EQT AB and in no way was taken "on behalf of" EQT AB. *See e.g. E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 198 (3d Cir. 2001) (no agency relationship where there was no evidence that the subsidiary was acting on behalf of the parent); *Skye Min. Invs., LLC v. DXS Cap. (U.S.) Ltd.*, 2020 WL 881544, at *24 (Del. Ch. 2020) (same); *Baccellieri v. HDM Furniture Indus., Inc.*, 2013 WL 1088338, at *3-4 (Del. Super. Ct. 2013), *aff'd*, 74 A.3d 653 (Del. 2013) (same). Finally, Carlson's conclusory pleadings that EQT AB wholly owned and thus could have controlled payments under the contract, Compl. ¶¶ 123, 129, 182, are equally true of every parent-

10

subsidiary relationship and are thus insufficient to plead this narrow agency exception. *See Arcelik A.S. v. EI DuPont de Nemours & Co.*, 2023 WL 3862506, at *4 (3d Cir. 2023) ("Collaborating across legal entities . . . is exactly what one expects from a parent-subsidiary relationship—a relationship that does not generally generate liability for the parent.").

## III.    The Complaint Fails to Plead Fraud with Particularity.

As an initial matter, Carlson offers no response to Defendants' argument that he has failed to plead any allegedly false statement made by an employee of EQT AB, as opposed to an employee of Exeter. Mot. 26. For that reason alone, his fraud claims against EQT AB fail. *See Shaw v. New Castle Cnty.*, 2021 WL 4125648, at *2 (D. Del. 2021) (gathering case law that failure to address arguments in opposition brief constitutes abandonment).

The remaining fraud claims against Exeter also fail.[2]

---

[2] Carlson tries to reduce his pleading burden by contending that the Third Circuit is "lenient" when applying Rule 9(b). Opp'n 20. But Carlson must – just like any other plaintiff – comply with Rule 9(b)'s mandate that fraud be pleaded with "particularity." In the Third Circuit, that "stringent" standard means Carlson must "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

*First*, Carlson alleges that "Defendants"[3] told him before he signed the deal that "the EMVF II fund was the same Workforce Housing Value Fund contemplated under the agreement," and was therefore "eligible for an Earn-Out" payment. Opp'n 21. But reliance, even at the pleading stage, "must be reasonable." *Ajay Endeavors, Inc. v. Divvymed, LLC*, 2022 WL 605695, at *2 (D. Del. 2022) (Bibas, J.). It is unreasonable for Carlson to claim that he and his sophisticated counsel relied on an oral statement that EMVF II was earnout eligible when the parties' heavily negotiated earnout clause says no such thing – and in fact disclaims reliance on such external representations. PA §§ 2.13, 3.19. If the parties had intended for EMVF II to be earnout eligible, the Purchase Agreement simply would have said so. *See Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *13 (Del. Ch. 2018) (reliance was unreasonable where parties were "represented by counsel" and did not incorporate the alleged pre-signing promise into the "highly-negotiated agreement"); *Ajay Endeavors*, 2022 WL 605695, at *2 (Bibas, J.) (same, where plaintiffs "were sophisticated" and allegations were "contradicted by the [contract] they signed").

*Second*, the remainder of Carlson's allegations do not plead any actionable *false* representations of *present* material fact. His contention that he was told that

---

[3] All of Carlson's group allegations do not comply with Rule 9(b) and should be disregarded. Mot. 22-23.

12

EMVF II "would be ready to launch after the Transaction closed" and that "the three-year timeline for an Earn-Out" would "be easily satisfied," Opp'n 21, are predictions about unknowable future events.  Carlson negotiated the right to receive earnout payments if he successfully fundraised up to $2 billion in capital commitments from third party actors.  Exeter could in no way predict whether those third parties would invest and thus could not know whether Carlson's earnout targets would be "easily satisfied."  *See Edinburgh Holdings,* 2018 WL 2727542, at *12 (no fraud where statements about what the company "hoped [it] could achieve in the following four years . . . was not ***knowable*** at the time" (emphasis in original)).  Finally, Carlson does not plead that the statement that there "was already a PPM being drafted for the EMVF II fund," Opp'n 21, was actually false, but only complains about the document's quality – "the PPM[] was sloppy and disorganized," Compl. ¶ 19. *See Twardzik v. HP Inc.*, 2022 WL 606092, at *5 (D. Del. 2022) (Bibas, J.), *aff'd*, 2023 WL 5770999 (3d Cir. 2023) (no fraud where the plaintiff "never pleads facts showing that [the statement] is false").

## IV.    The Plain Terms of the Purchase Agreement Bar the Complaint's Negligent Misrepresentation Claim.

Again trying to rewrite the terms of the Purchase Agreement, Carlson insists that he can sue Exeter for alleged negligent misrepresentation, Opp'n 26-27, despite the Agreement's clear bar to that claim.  The Purchase Agreement includes non-reliance and integration clauses that disclaim reliance on external representations but

13

that preserve claims based on "***actual and intentional fraud***." *See* PA §§ 2.13, 3.19, 9.5, p. 71 (emphasis added).

Actual and intentional fraud is premised on "the defendant's ***knowledge*** or ***belief*** that the representation was false," *Infab Holdco, Inc. v. Cusick*, 2025 WL 1430771, at *4 (Del. Ch. 2025) (citation omitted, emphasis added), while negligent misrepresentation is based on the defendant's mere "***negligence***" regarding the representation, *Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*, 2008 WL 963048, at *8 (Del. Ch. 2008) (emphasis added). The Purchase Agreement thus distinguishes between fraud claims premised on intentional conduct as opposed to negligent conduct, permitting the former and barring the latter. *See Express Scripts, Inc. v. Bracket Holdings Corp.*, 248 A.3d 824, 831-34 (Del. 2021) (carveout for "deliberate fraud" barred claim premised on recklessness because "the parties sought to distinguish deliberate fraud from other mental states").

## V.    The Complaint's Unjust Enrichment Claim Is Barred Because Carlson's Rights Are Governed by the Purchase Agreement.

As above, Carlson does not respond to Defendants' argument that EQT AB was not a party to and thus not enriched under the Purchase and Employment Agreements, and Plaintiff has therefore abandoned his unjust enrichment claim against EQT AB.

That claim against Exeter also fails because "a contract already governs the parties' relationship." *Ajay Endeavors,* 2022 WL 605695 at *2 (Bibas, J.). Contrary

14

to Carlson's contention that his unjust enrichment claim arises from facts "independent of" his breach of contract claims, Opp'n 28-29, the heart of both sets of claims is that Exeter prevented Carlson from achieving his earnout milestones and thus breached the Purchase Agreement's earnout clause at Section 1.5. As Carlson's cited case explains, Opp'n 28, it is that "contractual provision" that "govern[s] the allegations underlying Plaintiffs' unjust enrichment claim." *Capano v. Ecofibre Ltd.*, 2025 WL 419494, at *1 (Del. Ch. 2025); *see also Ajay Endeavors*, 2022 WL 605695, at *2 (Bibas, J.) (dismissing unjust enrichment claim where the contracts provided the relevant legal remedies); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) (same).

## VI.    The Complaint Identifies No Gap in the Purchase Agreement for the Implied Covenant of Good Faith and Fair Dealing to Fill.

While Plaintiff argues that Exeter "frustrated the spirit of the Purchase Agreement" because his fundraising for EMVF II distracted him from fundraising for earnout-eligible funds, Opp'n 31, he still fails to identify any gap in the Purchase Agreement to be filled with the implied covenant. Exeter's obligation regarding Carlson's earnout is clearly enumerated in the Purchase Agreement: Exeter was not to "take any action with the primary intent of interfering with Carlson's ability to achieve the maximum Earn-Out Payments." PA § 1.5(d)(i). Because the Purchase Agreement is not "truly silent with respect to the matter at hand," *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032 (Del. Ch. 2006), Carlson's implied

15

covenant claim should be dismissed, *see Richard A. Schuetze, Inc. v. Utilligent, LLC*, 2022 WL 958359, at *2 (D. Del. 2022) (Bibas, J.) ("agreement's express terms leave no room for an implied covenant"); *Osram Sylvania Inc. v. Townsend Ventures, LLC*, 2013 WL 6199554, at *18 (Del. Ch. 2013) ("express contractual provisions 'always supersede' the implied covenant").

## CONCLUSION

For the reasons set forth herein and Defendants' Opening Brief, the Court should grant Defendants' partial motion to dismiss.

|  |  |
|---|---|
|  | */s/ Christopher Fitzpatrick Cannataro* |
|  | A. Thompson Bayliss (#4379) |
| OF COUNSEL: | Christopher Fitzpatrick Cannataro (#6621) |
|  | ABRAMS & BAYLISS LLP |
| Shannon Rose Selden | 20 Montchanin Rd., Suite 200 |
| Barrett J. Greenwell | Wilmington, DE 19807 |
| DEBEVOISE & PLIMPTON LLP | (302) 778-1000 |
| 66 Hudson Boulevard | bayliss@abramsbayliss.com |
| New York, NY 10001 | cannataro@abramsbayliss.com |
| (212) 909-6000 |  |
| srselden@debevoise.com | *Attorneys for Exeter Property Group, LLC* |
| bjgreenwell@debevoise.com | *and EQT AB* |

Date: September 8, 2025

16

**CERTIFICATION OF COMPLIANCE**

Under Chief Judge Connolly's Standing Order Regarding Briefing in All Cases (the "Standing Order"),[4] dated November 10, 2022, I, Christopher Fitzpatrick Cannataro, Esq. hereby certify that:

1.      This brief complies with the word-count requirements of the Standing Order, as amended by the Stipulation and Order Setting Briefing Schedule And Extending Word Limits For Briefing on Defendants' Motion To Dismiss (D.I. 14), because this brief contains 3,725 words, which is less than or equal to the permitted 3,750 words (15 pages x 250 words) for this brief.

2.      This brief complies with the Standing Order's font and type-face requirements because the brief is typed in 14-point Times New Roman font.

3.      The front and back covers of the courtesy copies of this brief provided to chambers comply with the Standing Order because they are printed on gray paper.

---

[4] Out of an abundance of caution, Defendants submit this brief in compliance with the Standing Order, which is modeled after and is largely consistent with briefing requirements established by the United States Court of Appeals for the Third Circuit.

/s/ Christopher Fitzpatrick Cannataro
Christopher Fitzpatrick Cannataro (#6621)
ABRAMS & BAYLISS LLP
20 Montchanin Rd., Suite 200
Wilmington, DE 19807
(302) 778-1000
cannataro@abramsbayliss.com

*Attorney for Exeter Property Group, LLC and EQT AB*

2